**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

BLANCHE BARBER, individually,
and a class of similarly situated
individuals,

          Plaintiff,

v.

CHARTER TOWNSHIP OF SPRINGFIELD,
et al.,

          Defendants.

                   /

Case No. 19-13519

Honorable Nancy G. Edmunds

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR JUDGMENT ON THE PLEADINGS [17] AND**
**DENYING MOTION FOR LEAVE [26]**

This dispute centers around the proposed removal of the Mill Pond and Mill Pond

Dam.  Plaintiff lives next to the pond.  She initiated this action seeking to prevent the

Defendant government entities from removing the dam.  She asserts claims for violations

of the takings clauses of the Fifth Amendment and the Michigan Constitution as well as a

claim for trespass under Michigan law.

Pending before the Court is Defendants' Motion for Judgment on the Pleadings.

(ECF No. 17, 19.)  In their motion, Defendants argue that Plaintiff's takings claims are not

ripe and that Plaintiff lacks standing to pursue her claims.  Defendants also contend that

Plaintiff's trespass claim is barred by governmental immunity.  Plaintiff opposes the

motion.  Plaintiff also submits a separate motion seeking leave to submit additional

evidence in support of her response to Defendants' motion to dismiss. (ECF No. 26.)

Plaintiff's motion is currently pending before the Court and is opposed by Defendants.

The Court has reviewed the record in its entirety and finds that the decision process would not be significantly aided by oral argument.  Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), the motions will be decided on the briefs and without oral argument.  And for the reasons set forth below set forth below, Defendants' motion for judgment on the pleadings is **GRANTED**, and Plaintiff's motion for leave is **DENIED**.

## I.       Background

Plaintiff is a resident of and owns residential property within the Charter Township of Springfield, Oakland County, Michigan.  The Mill Pond Dam, also known as the Davisburg Dam, is located on Davisburg Road between Rotary Park and Mill Pond Park, which are north and south of the dam, respectively.  Both the dam and the pond were constructed in approximately 1836.  Plaintiff's property is adjacent to the Mill Pond and Mill Pond Dam.  Plaintiff's alleges that her home was built sometime in the late 1800's after the construction of the pond.  She claims that the scenic view of the pond attracted construction and homeowners to the area.

According to the amended complaint, the dam was privately owned from the time of its construction until Oakland County acquired the dam at an unspecified time between 1940 and 1983.  In 1984, Springfield township completed major modifications to the dam. *Id*.  That same year Oakland County conveyed the property now referred to as Mill Pond Park to Springfield Township.  However, the dam itself was not included in this conveyance.  Instead, Oakland County retained ownership of the dam and the Oakland County Parks and Recreation Commission ("OCPRC") and Springfield Township agreed to work together to maintain, service, and repair the dam.  Under the parties' arrangement, OCPRC is responsible for 55% of the financial obligations associated with any projects

concerning the dam and Springfield Township is responsible for the other 45%.  Rotary Park is located on the outfall side of the dam and is owned, operated and maintained by Oakland County Parks and Recreation Commission, while Mill Pond Park, located upstream, is owned, operated, and maintained by Springfield Township.

In September 2017 Springfield Township formed the Mill Park Pond Committee to explore options of how the dam and adjacent areas could be best utilized.  The committee was charged with exploring options and funding opportunities to revitalize Mill Pond Park in two scenarios: (1) maintain the Mill Pond Dam and improve the pond, and (2) remove the dam and restore the river corridor.  In October 2018, a feasibility study began.  After this study concluded, the Springfield Township Board met to discuss the possible options for the dam.

Ultimately, in June 2-19, the board unanimously voted to recommend the removal of the dam.  Preliminary planning began, and in November 2019, the Springfield Township Board adjusted its contract with "AECOM" for removal and restoration of the dam to also include assistance in designing and creating a new park.  With payment for the project set at the previously agreed to 55% and 45% cost sharing arrangement between the County and Township, the project has moved to preliminary engineering and conceptual park design.

Concerned about the impact that the prospective project would have on her property, on October 28, 2019, Plaintiff initiated a lawsuit in state court in Oakland County, Michigan.  Plaintiff claims that removal of the dam could, among other things, reduce the value of her property, turn her property into a "swamp", and pollute, impair, and destroy

3

natural resources.   She also claims removing the dam could cause damage to the surrounding environment.

On November 27, 2019, Defendants removed this action to this Court.   On February 21, 2020 Plaintiff filed an amended complaint.  The amended complaint includes four separate counts: a request for a preliminary injunction (Count 1); 42 U.S.C. § 1983 claim for Fifth Amendment takings violations (Count II); a claim for violation of the takings clause of the Michigan Constitution (Count III); and a claim for trespass under Michigan common law (Count 4).

On March 24, 2020, Defendants moved for judgement on the pleadings under Federal Rule of Civil Procedure 12(c) as to Plaintiff's amended complaint.   Plaintiff opposes the motion.   After briefing was closed on Defendants' motion, Plaintiff filed a motion for leave to submit additional evidence in support of her response to Defendants' motion.   Both motions have now been fully briefed and are ripe for consideration.   And based on the Court's understanding of the pleadings and the record in this case, as of this time, construction has not officially begun on the dam project nor has any part of the dam been removed.

## II.   Legal Standard

Defendants move for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  Motions for a judgment on the pleadings under Rule 12(c) are analyzed under the same standard as motions to dismiss for failure to state a claim under Rule 12(b)(6*). Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001) (citing *Mixon v. Ohio*, 193 F.3d 389, 399-400 (6th Cir. 1999).   When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to

the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).  "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).  Dismissal is appropriate if the plaintiff failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Supreme Court clarified the concept of "plausibility" in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557, 127 S.Ct. 1955 (brackets omitted).

*Id*. at 678.  A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).  Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527.

In addition, if a court considers matters outside of the pleadings, the court must convert the motion into one for summary judgment under Rule 56. *Turner v. Corr. Med. Servs., Inc.*, No. 13-11783, 2014 WL 861579, at \*2 (E.D. Mich. Mar. 5, 2014). However, "[w]hen a court is presented with a 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). But "a court may only take judicial notice of a public record whose existence or contents prove facts whose accuracy cannot reasonably be questioned." *Passa v. City of Columbus*, 123 Fed. App'x 694, 697 (6th Cir. 2005).

### III.    Analysis

#### A.    Ripeness

Defendants contend Plaintiff's takings claims, asserted under both the Fifth Amendment and the Michigan Constitution, should be dismissed because they are not ripe. Whether a claim is ripe for judicial review invokes "one of several principles of justiciability" and "arises in those cases anchored in future events that may not occur as anticipated, or at all*." Insomnia, Inc. v. City of Memphis*, 278 F. App'x 609, 612 (6th Cir. 2008). "The doctrine is designed to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Id.* (internal quotation marks and citations omitted). Courts in the Sixth Circuit generally consider three factors in determining whether a claim is ripe. *See Dubuc v. Twp. of Green Oak*, 406 F. App'x 983, 990 (6th Cir. 2011). These factors include: (1) the likelihood that the harm alleged by

plaintiff will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings. *Id.*

The concept of ripeness has evolved over time. Specifically, in the context of claims asserting a taking of a property interest in violation of the Fifth Amendment, the Supreme Court has "broadened this ripeness inquiry" to "first requir[e] that the government entity ... reached a final decision regarding the interest at issue." *Id.*[1] *See, e.g., Crosby v. Pickaway Cnty Gen. Health Dist.*, 303 F. App'x 251, 259 (6th Cir. 2008) (citing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186, 194-95 (1985)). And in *Knick v. Twp. of Scott, Pennsylvania*, 39 S. Ct. 2162, 2177, (2019), the Supreme Court clarified that a government violates the Takings Clause when it takes property without compensation, and that a property owner may bring a Fifth Amendment claim under § 1983 at that time. Thus in order for a takings claim to be considered ripe, the complaint must contain sufficient factual allegations to establish that a taking has occurred, or in the case of a regulatory taking, that a final decision has been reached with respect to the property or regulation at issue. *See. id. See also Hensley v. City of Columbus*, 557 F.3d 693, 696 (6th Cir. 2009) (discussing the differences between a physical and regulatory taking and explaining that with a "physical taking, the taking itself is viewed as a final action because, once the property's value has been allegedly destroyed, there is nothing else to do.").

---

[1] Until recently, plaintiffs were also required to establish that the property owner had exhausted the proper state procedures for seeking just compensation before seeking relief in federal court. *See Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186, 194-95 (1985)). But the Supreme Court struck down that additional requirement in *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 204 L. Ed. 2d 558 (2019).

Here, construing the factual allegations in the amended complaint as true and in a light most favorable to Plaintiff, the Court finds that Plaintiff's takings claims are not ripe. There is no dispute that the dam has not been removed.  There is also no serious dispute as to whether Plaintiff's property has in fact been physically usurped by Defendants at this time as there are no allegations in the amended complaint that any party has taken any action to physically invade Plaintiff's property interest.  Notwithstanding, Plaintiff contends that a "taking" occurred and her claim became ripe "the moment the Mill Pond Park Committee was formed by Springfield Township."  In other words, according to Plaintiff, Defendants' process of considering and planning for the potential future removal of the dam constitutes an unconstitutional actionable taking.[2]

According to the amended complaint, the only concrete step taken towards removal of the dam is the allegation that Springfield Township, an entity that has no ownership interest in the dam and no control over it, passed a motion to recommend to the OCPRC that the dam be removed.  There are no allegations in the amended complaint indicating that the OCPRC accepted Springfield Township's recommendation.  There are similarly no allegations in the amended complaint indicating that the OCPRC took the additional step of recommending to the Oakland County Board of Commissioners that the dam be removed.  And as Defendants point out, the amended complaint fails to establish any "finality" as to whether the dam will ever be removed.

Moreover, the Court agrees with Defendants that Plaintiff fails to present sufficient factual allegations of the potential harm she will suffer if the Court assumes the dam will be removed.  There are not sufficient actual allegations establishing that a taking of

---

[2] The Court notes that Plaintiff does not assert a claim for violations of her due process rights.

Plaintiff's property has or likely will occur.  There are not sufficient factual allegations establishing that Plaintiff will suffer from an unconstitutional taking if the dam is removed. And there are not sufficient factual allegations to establish that just compensation will not be available to Plaintiff as a remedy if and when a taking of her property does in fact occur, which makes injunctive relief inappropriate at this time.[3] *See Knick*, 139 S. Ct. at 2179.

To this end, Plaintiff's reliance on the Supreme Court's decision in *Knick* is misplaced.  The Court agrees with Plaintiff that *Knick* eliminated the requirement for a property owner to exhaust the relevant state procedures for seeking just compensation before seeking relief for taking violation in federal court.  In *Knick*, the Court recognized that "property owners may bring Fifth Amendment claims…as soon as their property has been taken", regardless of whether the state has provided a remedy. *Knick*, 139 S. Ct. at 2170. *Knick*, however, does not stand for the proposition that a party can pursue a takings claim in federal court before a taking has occurred.

Here, the allegations in the amended complaint do not establish that a taking has occurred or that Plaintiff suffered harm as a result of such taking.  The amended complaint also lacks sufficient factual allegations to establish that a final decision has been made with respect to the future of the dam or that a taking will likely occur in the future.  Because the amended complaint lacks sufficient factual allegations to establish these elements, the Court finds Plaintiff's takings claims are not ripe and should be dismissed.

**B.    Standing**

---

[3] The Court also agrees with Defendants that a preliminary injunction is a remedy, not a standalone claim for relief.

In addition to challenging the ripeness of Plaintiff's claims, Defendants argue Plaintiff lacks standing because she fails to establish an injury in fact.

Standing is the "threshold question in every federal case." *Coyne v. American Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999). In order to satisfy Article III's standing requirement, a party: (1) must have suffered some actual or threatened injury due to the alleged illegal conduct (the "injury in fact element"); (2) the injury must be fairly traceable to the challenged action (the "causation element"); and (3) there must be a substantial likelihood that the relief requested will redress or prevent Plaintiff's injury (the "redressability element"). *See id.* To satisfy the injury in fact element, an injury must be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010)). "[T]hreatened injury must be 'certainly impending' to constitute injury in fact," and "[a]llegations of possible future injury" are not sufficient. *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

Here, the Court agrees with Defendants that Plaintiff fails to satisfy the injury in fact element and therefore lacks standing. The potential injuries identified by Plaintiff require the Court to speculate about, *first*, the actual removal of the dam, *second*, whether the removal of the dam will result in a taking, and then *third*, that Plaintiff will suffer the prospective damage identified in the amended complaint. The allegations in the complaint are too remote to establish standing at this time. Furthermore, Plaintiff's contention that the removal the dam will negatively affect property values and will damage local ecosystem are conclusory and do not resolve the burden to establish a "significant

possibility of future harm."  Like the ripeness inquiry, these injuries hinge on the removal

of the dam, which has not occurred.  The possibility of these prospective injuries arising

based on a hypothetical approval of the dam removal are far too speculative to confer

standing under the facts and circumstances presented in Plaintiff's complaint.  The injury

requirement is an "irreducible constitutional minimum" to establish standing. *Mason v.*

*Adams County Recorder*, 901 F.3d 753, 756 (6th Cir. 2018), and that minimum has not

been satisfied here.

### C.    Trespass

Defendants argue that Plaintiff's remaining claim—Count IV for trespass under

Michigan law—is barred by governmental immunity under M.C.L. 691.1407.  Plaintiff did

not respond to this portion of Defendants' motion.  Notwithstanding, the Court has

reviewed the record and agrees with Defendants on this issue.

The Michigan Governmental Immunity Act, M.C.L. § 691.1407(1), provides:

> Except as otherwise provided in this Act, all governmental agencies shall
> be immune from tort liability in all cases wherein the governmental agency
> is engaged in the exercise or discharge of a governmental function.

"Governmental function" is defined in the Act as "an activity which is expressly or impliedly

mandated or authorized by constitution, statute, local charter or ordinance, or other law."

*Id.*; *see Antonian v. City of Dearborn Heights*, 224 F. Supp. 2d 1129, 1143 (E.D. Mich.

2002).  And while there are a number a number of exceptions to governmental immunity

in Michigan, a claim for trespass is not. *See Pohutski v. City of Allen Park*, 465 Mich. 675,

641 N.W.2d 219 (2002) (holding that trespass is not an exception to governmental

immunity under Michigan law).  Because Plaintiff's trespass claim arises out of the

performance of a governmental function and there is no applicable exception, it is barred by governmental immunity under M.C.L. 691.1407.

### D. Plaintiff's motion for leave

Plaintiff moves the Court for leave to submit additional evidence in support of its response to Defendants' motion to dismiss. The proposed additional evidence includes information surrounding the alleged chain of title and proper ownership of the dam. Plaintiff contends this additional evidence establishes that a certain family, and not Oakland County owns the dam, and therefore it would be improper for Defendants to continue to consider removal of a dam that does not belong to them. Plaintiff alternatively asks the Court for leave to amend its complaint or to permit the family to intervene in this dispute.

Having reviewed the record on this matter in its entirety, the Court finds Plaintiff's motion should be denied. As an initial matter, the Court cannot consider matters outside of the pleadings in connection with Defendants' motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See Max Arnold & Sons, LLC v. W.L. Hailey & Co.,* 452 F.3d 494 (6th Cir. 2006). Moreover, the Court has reviewed the proposed additional evidence and concludes that the addition of such information to the complaint would not resolve the ripeness, standing, or governmental immunity issues that are fatal to Plaintiff's claims. Thus granting leave to Plaintiff to amend her complaint for a second time would be futile under the circumstances presented here.

### IV. Conclusion

For the foregoing reasons, Defendants' motion for judgment on the pleadings is **GRANTED** and Plaintiff's motion for leave is **DENIED**.

**SO ORDERED.**

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  December 3, 2020

I hereby certify that a copy of the foregoing document was served upon counsel of record
on December 3, 2020, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager

13